```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

MATTHEW PUZEY, on Behalf of    )
Himself and All Others         )
Similarly Situated,            )
        Plaintiff,             )
                               )    C.A. No. 11-11339-MLW
        v.                     )
                               )
BJ'S WHOLESALE CLUB,           )
INC., et al.,                  )
        Defendants.            )

## MEMORANDUM AND ORDER

WOLF, D.J.                                          March 31, 2012

I. SUMMARY

    This is a putative shareholder class action challenging the sale of BJ's Wholesale Club, Inc. ("BJ's") to an investment group, which the parties often refer to as a "merger." Defendants, which include BJ's, BJ's board of directors, and corporate entities involved in the merger,[1] have moved to stay proceedings (the "Motion") because parallel shareholder litigation is underway in the Delaware Court of Chancery. For the reasons described in this Memorandum, the Motion is being allowed to the extent that the plaintiff's state law fiduciary duty and aiding and abetting claims are being stayed as requested. The violations of the federal

---

[1] The defendants are BJ's Wholesale Club, Inc., Laura J. Sen, Herbert J. Zarkin, Thomas J. Shields, Paul Danos, Helen Frame Peters, Edmund J. English, Michael J. Sheehan, Christine M. Cournoyer, Leonard A. Schlesinger, Leonard Green & Partners, L.P., CVC Capital Partners Advisory (U.S.), Inc., Beacon Holding Inc., and Beacon Merger Sub Inc.

1

Securities and Exchange Act of 1934 ("Exchange Act") alleged in the current complaint are essentially moot because in it plaintiff seeks only to compel the amendment of a proxy statement that was subsequently amended and to enjoin a merger that has already occurred. However, the plaintiff has expressed a desire to amend the complaint to seek damages for the alleged violations of the Exchange Act. While it appears that it would not be appropriate to stay the litigation of the proposed new Exchange Act claims, that issue is not now ripe for decision. The parties are being ordered to confer concerning possible settlement and the proposed amendment. If an amended complaint is filed, either as a matter of right or by leave of the court, the court will then decide if defendant's request for a stay of the Exchange Act claims should be granted.

II. BACKGROUND

On June 29, 2011, BJ's announced that it had entered into an agreement to be acquired by an investment group for a price of $51.25 per share. Over the next two weeks, multiple BJ's shareholders filed putative class action lawsuits in the Delaware Court of Chancery challenging the merger. These cases were consolidated on July 26, 2011, under the caption <u>In re BJ's Wholesale Club Inc. Shareholders Litigation</u>, C.A. No. 6623-VCN (the "Delaware litigation").

The Delaware plaintiffs alleged that the defendants, who are

also the defendants in the instant case, had either breached fiduciary duties owed to BJ's shareholders or aided and abetted in breaching of fiduciary duties by: (1) failing to obtain a fair price for the company; (2) failing to conduct a fair sale process; (3) acting in self-interest; and (4) filing a misleading proxy statement regarding the merger that failed to fully disclose material information to shareholders. In their complaint, the Delaware plaintiffs sought compensatory damages, as well as injunctive relief to prevent the merger from taking place and to compel the defendants to disclose all material information relating to the merger.

On July 27, 2011, the plaintiff in this action, Matthew Puzey, filed this putative shareholder class action. Puzey alleged that the defendants had violated Delaware law by breaching fiduciary duties owed to BJ's shareholders or aiding and abetting the breaching of fiduciary duties by: (1) failing to maximize shareholder value and obtain a fair price for the company; (2) failing to conduct a fair sale process; and (3) engaging in self dealing. In addition, Puzey asserted violations of §§14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§78n & 78t, alleging that defendants had filed a materially misleading proxy statement regarding the merger. Section 27 of the Exchange Act grants federal courts "exclusive jurisdiction" over Exchange Act claims. See 15 U.S.C. §78aa. In his complaint, plaintiff sought injunctive relief

3

to prevent the merger, and to require the defendants to cure both the alleged breaches of fiduciary duties under Delaware law and the alleged violation of the Exchange Act by failing to accurately and completely disclose material information.

With a BJ's shareholder vote on the merger scheduled for September 9, 2011, the Delaware litigation proceeded on an expedited basis. The Delaware plaintiffs moved for a preliminary injunction on August 24, 2011, and a hearing on that motion was scheduled in the Delaware Court of Chancery for September 2, 2011. Puzey did not move for a preliminary injunction in this court. On August 29, 2011, defendants moved to stay proceedings in this case, asserting, in essence, that this court should abstain from taking action because the Delaware litigation was a parallel state proceeding.

On August 29 and August 31, 2011, defendants amended the merger proxy statement. The Delaware plaintiffs withdrew their motion for a preliminary injunction on September 1, 2011, informing the Delaware Court of Chancery that the amendments had rendered the disclosure issues identified in their motion for preliminary injunction moot.

The merger was overwhelmingly approved by BJ's shareholders on September 9, 2011.[2] The transaction was consummated on September

---

[2] The merger was approved by 99.6% of the shareholders who voted, with approximately 72% of the holders of BJ's outstanding common stock voting.

30, 2011. After some expedited discovery in the Delaware litigation, the defendants filed a motion to dismiss, which is fully briefed and pending before the Delaware Court of Chancery. The Delaware plaintiffs anticipate filing a second amended complaint on or about April 6, 2012.

Puzey opposes defendants' motion to stay proceedings in this court. He asserts that a stay is not appropriate, in part because his case includes Exchange Act claims that are within the exclusive jurisdiction of the federal courts. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-21 (1976) ("Colorado River"). Defendants argue that a stay is both permitted and justified under Colorado River. Defendants further contend that plaintiff's Exchange Act claims are moot because plaintiff's complaint seeks only to enjoin the defendants from consummating the merger until a fair process is adopted to sell the company and to compel amendment of the proxy statement, but the proxy statement was amended and the merger is now complete. As described earlier, plaintiff indicates that he now wishes to amend his complaint to seek damages.

III. THE LEGAL STANDARDS

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254

(1936); see also Marquis v. FDIC, 965 F.2d 1148, 1154-55 (1st Cir. 1992) ("absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention").

In cases involving "contemporaneous exercise of concurrent jurisdictions" between state and federal courts, Colorado River abstention doctrine governs. Colorado River 424 U.S. at 817-21; see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 13-29 (1983) ("Moses Cone"). The general rule is that "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court'" because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)); see also Moses Cone, 460 U.S. at 15-16; Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27-28 (1st Cir. 2010).

Nevertheless, there are "exceptional" circumstances where "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" permit a federal court to abstain from exercising jurisdiction "due to the presence of a concurrent state proceeding." Colorado River, 424 U.S. at 817-18 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)); see

6

also Moses Cone, 460 U.S. at 15-16; Jimenez, 597 F.3d at 27-28. The First Circuit has identified a variety of factors that should be weighed in determining whether such exceptional circumstances exist, including:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Jimenez, 597 F.3d at 27-28 (quoting Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005)). These factors are not 'exhaustive, nor is any one factor necessarily determinative.'" United States v. Fairway Capital Corp., 483 F.3d 34, 40 (1st Cir. 2007) (quoting KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003)). "[T]he decision whether to dismiss [or stay] a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses Cone, 460 U.S. at 16; see also Jimenez, 597 F.3d at 28.

In determining whether Colorado River abstention is appropriate, a threshold issue is whether the state litigation is parallel to the federal case. "Two suits are considered '"parallel" when substantially the same parties are contemporaneously

litigating substantially the same issues in another forum.'" Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004) (quoting Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988); see also McLaughlin v. United Virginia Bank, 955 F.2d 930, 935 (4th Cir. 1992) (same). "[T]here should be a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" Clark, 376 F.3d at 686 (quoting Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir. 1985)); see also McLaughlin, 955 F.2d at 935-36.

IV. ANALYSIS

   A. <u>A Stay of the State Law Claims is Justified</u>

In the present case, plaintiff has not argued that the Delaware litigation and this case are not parallel with regard to the state law fiduciary duty and aiding and abetting claims. In any event, they are parallel. The identities of the parties are substantially the same, as both this case and the Delaware litigation are putative class actions brought on behalf of BJ's shareholders against BJ's, BJ's board members, and the corporate entities involved in the merger. Both cases originally sought to enjoin the merger. Plaintiffs in both cases now seek, or intend to seek, damages. In addition, the breach of fiduciary duty and aiding and abetting claims in both cases, which are governed by Delaware law because BJ's was incorporated Delaware, are nearly identical and are predicated on virtually the same factual allegations.

8

Therefore, the two cases are parallel with regard to the plaintiff's state law claims. See Clark, 376 F.3d at 686-87.

The relevant factors discussed by the First Circuit in Jimenez, 597 F.3d at 27-28, weigh heavily in favor of staying Puzey's state law claims, and make this one of the exceptional cases in which the presumption that federal jurisdiction will be exercised has been rebutted.

This case presents a significant risk of piecemeal litigation of the same claims, which is an important factor in deciding whether abstention is appropriate. The First Circuit has held that the risk of piecemeal litigation favors abstention where a state court decision could negate the need for the federal court to act on complex issues relating to state law, or where state and federal actions may arrive at different outcomes on the same issue. See Rivera-Feliciano v. Acevedo-Vila, 438 F.3d 50, 62 (1st Cir. 2006); Currie v. Group Ins. Comm'n, 290 F.3d 1, 10-11 (1st Cir. 2002); Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475, 477 (1st Cir. 1985); see also LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1560 (7th Cir. 1989) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results") (internal quotation omitted). This is such a case.

Here, resolution of the Delaware litigation would likely negate the need for this court to decide Puzey's fiduciary duty and

aiding and abetting claims. These claims are controlled by Delaware law, in which the Delaware courts are expert. The Delaware courts are also widely recognized for their expertise in dealing with complex shareholder litigation and are, therefore, adequate to protect the parties' interests. See, e.g., In re Novell, Inc. S'holder Litig., C.A. No. 10-12076-RWZ, 2012 WL 458500, at *8 (D. Mass. Feb. 10, 2012) ("Novell"); Giles v. ICG, Inc., 789 F. Supp. 2d 706, 713-715 (S.D. W. Va. 2011); Krieger v. Atheros Commc'ns, Inc., 776 F. Supp. 2d 1053, 1062-63 (N.D. Cal. 2011). In addition, allowing the state law claims to proceed in both courts would involve the risk of generating conflicting decisions on the same issues.

Accordingly, this case presents the classic risks of piecemeal litigation. If the state law claims are to be decided in only one jurisdiction, the courts of Delaware provide a fine forum for doing so. See Novell, 2012 WL 458500, at *8; Giles, 789 F. Supp. 2d at 713-714; Krieger, 776 F. Supp. 2d at 1062-63.

The order in which the respective courts obtained jurisdiction also weighs in favor of abstention. In evaluating this factor, "'the relative progress of the suits [at the time of balancing] is more important than the strict order in which the courts obtained jurisdiction.'" Jimenez, 597 F.3d at 30-31 (quoting Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991)); see also Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 52 (1st Cir. 1995). The

10

instant case was filed several weeks after the Delaware litigation and no discovery has been conducted. In contrast, in the Delaware litigation, the parties have conducted some discovery relating to both the proxy statement and the shareholder vote on the merger. There is also a motion to dismiss the Delaware litigation which is fully briefed and pending before the Delaware Court of Chancery. The Delaware plaintiffs plan to file a second amended complaint on April 6, 2012. The facts that the Delaware litigation was both first-filed and has progressed further than the instant case, therefore, weigh in favor of abstention. See Jimenez, 597 F.3d at 30-31.

The remaining Jiminez factors are either neutral or do not strongly favor either party. Neither this court nor the Delaware Court of Chancery has assumed jurisdiction over property. Concerns regarding removal jurisdiction are not implicated. The federal forum is not geographically inconvenient. See Moses Cone, 460 U.S. at 16; Fairway Capital, 483 F.3d at 41-42; Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir. 1990). However, the fact that the instant case was filed after the Delaware litigation and substantially mirrors the allegations made in it provides some suggestion that the instant case is vexatious or contrived in nature, which favors abstention.[3]

---

[3] The vexatious or contrived inquiry generally focuses on whether the federal lawsuit was a defensive reaction to state proceedings. See KPS & Assocs., 318 F.3d at 11; Gonzalez, 926 F.2d

Therefore, several significant factors weigh heavily in favor of abstention concerning the state law claims and there are no meaningful countervailing considerations. Accordingly, the strong presumption that jurisdiction should be exercised has been rebutted with regard to the state law claims. See Jimenez, 597 F.3d at 27-32. Thus, the state law fiduciary duty and aiding and abetting claims in this case are being stayed.

B. <u>Whether the Federal Exchange Act Claims Should Be Stayed is Not Ripe to Be Decided</u>

As explained earlier, in the current complaint, plaintiff seeks to enjoin the merger and require amendment of the original proxy statement, in part based on alleged violations of the Exchange Act. However, the proxy statement addressed by the complaint has since been amended and the merger has occurred. Therefore, the plaintiff's current Exchange Act claims are essentially moot.

In his sur-reply to the motion to stay, plaintiff expresses a desire to amend the complaint to seek damages. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386-89 (1970) (concluding monetary damages are suitable retrospective relief for Exchange Act violations). The issue of whether he may amend as a matter of right

---

at 4. It may also take into account the prospect of forum shopping. See Villa Marina, 915 F.2d at 15. Here, the possibility of forum shopping is present because the plaintiff's case was later-filed and differs only slightly from the Delaware litigation. See McCreary v. Celera Corp., No. 11-1618 SC, 2011 WL 1399263, at *5 (N.D. Cal. Apr. 13, 2011).

12

or whether leave of the court is now required has not been briefed. See Fed. R. Civ. P. 15(a). In any event, leave to amend is, absent certain circumstances, ordinarily freely granted. See Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962); United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733-34 (1st Cir. 2007).

If the complaint is amended to seek damages for the alleged violations of the Exchange Act, it appears unlikely that a stay of litigation of those claims will be appropriate. Only federal courts have jurisdiction over Exchange Act claims. See 15 U.S.C. §78aa. Despite similarities between Delaware law and the Exchange Act regarding protections and remedies for material omissions or misstatements in proxy statements, the Delaware Supreme Court has noted that the "federal scheme of disclosure is not replicated in Delaware law." Loudon v. Archer-Daniels-Midland Co., 700 A.2d 135, 141 n.18 (Del. 1997) (citing Arnold v. Soc'y for Sav. Bancorp., Inc., 678 A.2d 533, 539 (Del. 1996)). Therefore, the Delaware litigation evidently will not resolve the plaintiff's Exchange Act claims. See Giles, 789 F. Supp. 2d at 712-15; Krieger, 776 F. Supp. 2d at 1058-60; Harrison v. XTO Energy, Inc., 705 F. Supp. 2d 572, 575-78 (N.D. Tex. 2010); Oakland County Emps.' Ret. Sys. v. Massaro, 702 F. Supp. 2d 1012, 1019-20 (N.D. Ill. 2010) ("Oakland County"); In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1170-72 (C.D. Cal. 2008)

13

("Countrywide"). In addition, because the Delaware plaintiffs withdrew their request for a preliminary injunction and notified the Delaware Court of Chancery that the alleged misstatements in the proxy statement were no longer at issue, it is not clear whether the adequacy of the proxy statement will be litigated in the Delaware proceedings. See Oakland County, 702 F. Supp. 2d at 1019 (declining to abstain in part because state litigation did not contain allegations regarding proxy statement). It appears, therefore, that the plaintiff's Exchange Act claims are not parallel to the Delaware litigation and should not be stayed. See Giles, 789 F. Supp. 2d at 712-15; Krieger, 776 F. Supp. 2d at 1058-60; Harrison, 705 F. Supp. 2d at 575-78; Oakland County, 702 F. Supp. 2d at 1017-21; Countrywide, 542 F. Supp. 2d at 1170-72.

However, it is premature to decide whether this court should stay any Exchange Act claims because the issue is now abstract. That decision will, if necessary, be most appropriately made on an informed basis concerning the specific allegations included in an Amended Complaint. If and when an Amended Complaint is filed, the issue of a stay on the Exchange Act claims will be ripe for resolution.

Accordingly, the parties are being ordered to confer concerning the possible settlement of this case and, if a settlement is not reached, concerning whether they agree that plaintiff is entitled, or should be permitted, to file an Amended

14

Complaint. If necessary, the court will, after appropriate briefing, decide any disputes, including the propriety of a stay of the Exchange Act claims in the proposed Amended Complaint.

V. ORDER

For the foregoing reasons, it is hereby ORDERED that:

1. Defendants' Joint Motion to Stay Proceedings (Docket No. 15) is ALLOWED to the extent that this litigation is STAYED with regard to plaintiff's state law fiduciary duty and aiding and abetting claims.

2. In view of the evolution of events, the request to stay the Exchange Act claims is not ripe for resolution.

3. By April 28, 2012, the parties shall confer and report, jointly if possible but separately if necessary, concerning the possible settlement of this case and, if it is not settled, whether they agree that plaintiff is entitled, or should be permitted, to file an Amended Complaint.

4. If the plaintiff wishes to file an Amended Complaint, he shall, by May 25, 2012, move to do so, and file the proposed Amended Complaint, as well as a supporting memorandum that addresses whether he has a right to amend and, if not, why leave of court to amend should be granted.

5. If defendants oppose amendment of the Complaint, they shall file their opposition by June 22, 2012.

6. If the defendants do not oppose amendment of the Complaint,

they shall respond to the Amended Complaint as required by the applicable provisions of the Federal Rules of Civil Procedure.

7. The parties shall, by July 20, 2012, respond to the attached Notice of Scheduling Conference.

8. A Scheduling Conference shall be held on August 8, 2012, at 3:00 pm.

                                                 /s/ Mark L. Wolf
                                     UNITED STATES DISTRICT JUDGE